■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v UMBERTO FERNANDEZ, Appellant. [923 NYS2d 517]—

Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered January 24, 2007, convicting defendant, after a plea of guilty, of manslaughter in the second degree, and sentencing him to an indeterminate prison term of 3 to 9 years, modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence to time served, and otherwise affirmed.

At the time of the incident, defendant was a 52-year-old law-abiding U.S. citizen with no criminal record. He lived with his sister and his mother, who suffers from multiple illnesses and is legally blind. In addition to caring for his mother, he supported his four young children, who live in the Dominican Republic.

Luis Gomez and his group of friends were known for causing property damage and perpetrating acts of violence in the community. In fact, defendant had previously had problems with Gomez. On this occasion, on December 21, 2005, defendant was returning home from work at 3:30 A.M., after having worked a long shift at his job at a restaurant. As defendant tried to enter the building, he encountered Gomez and his group. Gomez insulted defendant and prevented him from entering his apartment building. Although defendant attempted to avoid a confrontation with Gomez and his friends, Gomez took a metal object out of his pocket, presumably brass knuckles, and punched defendant in the face, breaking his nose and causing him to bleed profusely. According to defendant's sister, defendant was bleeding "a lot," his face was "totally swollen," and he was confused and uncoordinated.

Defendant was able to make his way up to his apartment,

where he tried to clean up. Nonetheless, the blood continued to flow from his nose, and he was experiencing extreme pain, physical weakness and disorientation. Defendant then left his apartment to go to the hospital. He also wanted to ask Gomez for an apology, fearing that if he did not confront Gomez, he would be the target of more violent attacks by Gomez and his group. Defendant did not know whether Gomez and his group would be downstairs. Consequently, he equipped himself with a kitchen knife. He put the kitchen knife under his coat for protection, explaining later that it was because "that group was very tough and dangerous." He further stated that he did not intend to kill anyone.

Upon returning downstairs, defendant found Gomez and one of his friends, Michael Fernandez, loitering in the vestibule. Gomez and Fernandez blocked defendant from leaving the building. At that juncture, defendant twice asked Gomez for an apology. Gomez refused, and instead taunted defendant, "loosened his jacket like a boxer," raised his hands and lunged at defendant with one hand. Fearing another savage beating and assuming that Gomez had a weapon in his hand, defendant pulled out the knife and lunged at Gomez's hand, stabbing him in the chest instead. Gomez and Fernandez took off running, and defendant returned to his apartment. It is not clear from the record whether defendant was able at the time to flee in safety.

Defendant did not pursue Gomez or Fernandez. Instead, he returned to his apartment without full knowledge of the extent of the injuries he had inflicted on Gomez. Nonetheless, he was in such a state of shock following the altercation that the police found him in a closet in a fetal position, crying and bleeding profusely.

On October 20, 2006, defendant was convicted, after a jury trial, of second-degree manslaughter. On November 17, 2006, Justice Berkman sentenced him to an indeterminate prison term of 5 to 15 years. In a thorough opinion by Justice McGuire, this Court reversed the judgment, and remanded for a new trial, on the ground that the trial court failed to charge criminally negligent homicide as a lesser included offense (64 AD3d 307 [2009]). Subsequently, defendant pleaded guilty to manslaughter in the second degree and was sentenced to 3 to 9 years. When the plea was entered, the prosecutor volunteered that, while his policy was to oppose parole in most cases, he would not do so in this case.

We now reduce defendant's sentence to time served (*see People v Rosenthal*, 305 AD2d 327, 329 [2003] [this Court "possesses broad, plenary powers to modify a sentence that is unduly harsh

or severe under the circumstances, in the interest of justice, even though the sentence falls within the permissible statutory range"], citing *People v Delgado*, 80 NY2d 780, 783 [1992]; *see also* CPL 470.15 [2] [c]; *People v Martinez*, 124 AD2d 505, 506 [1986] [in deciding what sentence is appropriate, this Court must consider various factors including "the nature of the crime, the defendant's circumstances, the need for societal protection, and the prospects for the defendant's rehabilitation"]).

Before this incident, defendant had lived a productive, crime-free life, caring for and providing support for his elderly and infirm mother, as well as his four children (*see People v Easton*, 216 AD2d 220, 221 [1995], *lv denied* 87 NY2d 845 [1995] [noting defendant's lack of criminal record, excellent employment history, support for three young children, and the exceptional nature of the incident as the basis for a sentence reduction]). There were 65 letters submitted to sentencing court on behalf of defendant. The common themes in these letters were defendant's compassion, decency, commitment to family, hard work, peaceful nature, positive influence on others and disbelief that he could have committed the crime of which he was convicted. We believe that, in causing Gomez's death, defendant acted wholly out of character. He was an older man in extreme pain and in fear of an unrepentant young man who terrorized him and committed a vicious act of violence. Defendant did not go downstairs with the express intention of killing Gomez. Indeed, when he encountered Gomez, defendant simply asked for an apology. Defendant wanted Gomez to accord him the basic level of respect and dignity to which everyone is entitled. He wanted to be able to live without fear. Unfortunately, defendant not only failed to acquire Gomez's respect, but, also, it appears that he was about to be subjected to a further beating at the hands of Gomez. In drawing his knife, defendant acted out of terror.

We recognize that this is a tragic case in which a young man was killed. However, in light of the circumstances discussed above, we believe that a prison term of 3 to 9 years is unduly harsh. Defendant has already been incarcerated for more than five years. This period of imprisonment is more than sufficient punishment for the aberrational act he committed. Concur—Catterson, Acosta and Manzanet-Daniels, JJ.

Tom, J.P., and Sweeny, J., dissent in a memorandum by Sweeny, J., as follows: I dissent.

This defendant, with the advice of counsel, entered into a negotiated plea. It was discussed with and accepted by a very experienced criminal judge, who, having already presided over

the trial in this matter, was fully familiar with all the facts and circumstances. After a thorough voir dire and presumably taking into consideration all the mitigating factors the majority relies on, the judge accepted the plea, and defendant was sentenced exactly as promised.

The facts are virtually undisputed. This defendant, returning to his apartment after allegedly being "terrorized" by the victim and his friends, ignored the entreaties of his sister, and not only went back downstairs to demand an apology from his attackers, but did so armed with a 10-inch serrated kitchen knife, "the biggest knife [he] could find." The end result of their confrontation was the death of the victim, 22-year-old Luis Gomez, from a three- to four-inch knife wound.

The broad, plenary power of an appellate court to modify a sentence, especially a negotiated one, may be exercised only where the sentence was unduly harsh or severe (*see People v Delgado*, 80 NY2d 780 [1992]; *People v Suitte*, 90 AD2d 80 [1982]; CPL 470.15 [2] [c]), and the case must present extraordinary circumstances to warrant a reduction (*People v McNeil*, 268 AD2d 611, 612 [2000]; *People v Bass*, 261 AD2d 651 [1999]). Even then, the court's intrusion into that area should be rarely exercised (*People v Sheppard*, 273 AD2d 498, 500 [2000], *lv denied* 95 NY2d 908 [2000]). No such circumstances exist here.

Defendant, rather than face a retrial that, as the judge fully explained, would include the lesser charge of criminally negligent homicide, made a reasoned decision to avoid a potentially longer sentence and accept the offer of 3 to 9 years, a lesser sentence than the one imposed after the trial. Such a sentence for the death of a young man was fair and does not provide a sufficient basis for the extraordinary exercise of interest of justice jurisdiction.